Unless the court has a particular issue it would like me to address, I just assume touch on each of the four issues that we've raised in our brief. First, I'd like to start with our Batson claim. The government struck a black juror for no apparent reason. A comparison of that black juror to other jurors who remained on the jury demonstrates that there could not be any reason to have struck her other than the fact that she was black. The court in determining whether or not a prima facie showing had been made did not go through much of an analysis. All, in fact, the court said was, is Batson really applicable when we have two other blacks on the jury, which, of course, is an incorrect standard. This Court's very ---- KAGAN Well, it seemed to me that that was just part of a discussion of thinking aloud and that the Court's ultimate determination was that there wasn't a prima facie case. But I don't think that ---- I don't read it as the Court saying, I'm not going to think about it. I read it as the Court's sort of musing, how can you make out your case when ---- and if you read it that way, does that alter how we're supposed to analyze this? WINSTON Well, I think part of the problem is that's the only analysis we heard from the Court. So it's completely unclear whether the Court was merely musing aloud. It certainly was part of its thinking at the time, and that's the only thinking that we have, is an incorrect thought. That is, whether or not the fact that there were already two blacks on the jury means that striking a third is ---- could possibly be a Batson violation. And, of course, striking even a single juror on account of race does violate that. Sotomayor Well, it can, but isn't it also fair to say that it reduces the level of inference that can be drawn from striking the juror? WINSTON It can, absolutely. This Court has certainly said that if the prosecution has accepted some blacks on the jury, that striking additional ones certainly means that it's possible that they weren't striking ---- Sotomayor Because there's no pattern. WINSTON But, of course, a pattern is not required in order to demonstrate a prima facie showing, which is why, in our brief, we set forth the comparative analysis that we did. Kagan Let me ask you about that, because the comparative analysis is one that was not made to the district court. So I'm not entirely clear how it's germane. WINSTON Well, and again, I think this is ---- part of the problem is how little analysis the Court did. The Court essentially, as counsel is giving his argument, the Court cut him off and said, is Batson really applicable? And that pretty much ended the discussion. I believe he said, defense counsel then went on to say something to the effect of, well, Ms. Small has a brother-in-law who was on MAPD, and there can't be any possibility, if that's the only reason, that's the only thing that makes her different from anybody else, and that couldn't possibly be a basis to strike her. Kagan Well, no. I guess I'm saying if you really wanted a cumulative analysis, as it were, to be considered, it seemed to me the appropriate thing to do would be to have asked the judge to relook at the Batson issue after the jury selection process had been completed and then make the pitch. Now that it's happened, you can see plainly that this must have been for a discriminatory reason. Well, at that point, the Court was, there were only three blacks in the veneer, in the jury pool. And two had been seated, and then Ms. Small was the only remaining black. So there could not have been any other black jurors on there. So it wouldn't have come up after that. And of course, we also have, the government actually has now proffered some explanation in its brief as to why it struck the jurors. Those explanations, though, are somewhat implausible. Kagan It seems to me we ought to be stuck with what the record was made in front of the district court by both sides. Verrilli, Jr. And perhaps that's true, though it certainly does raise some question. Given the fact that the judge did not go through any type of analysis and did raise a question as to whether Batson was really applicable, here this Court now is aware that the government's only reasons weren't justifiable reasons, and in fact, would have demonstrated purposeful discrimination on their part, perhaps. That those, in fact, were pretextual reasons that they gave. So we would ask, at least, because it's not clear whether the district court did apply the correct legal standard, that this actually be sent back for a hearing for the judge to, in fact, analyze this under the proper legal standard. Our second issue is exclusion of evidence of a staying complaint against Officer Scheer. All parties were in agreement that the credibility of the officers was, in fact, paramount to the government's case. The government's case consisted of two officers and a negative fingerprint expert. The two officers- I think we're familiar with the facts, but the issue that I, or the question that I have with regard to this is, it seems to me, at least, that the district court, as I read it, weighed the evidence under 403 and said, yeah, it might be relevant, but I am going to weigh these other factors. I don't want to have a mini-trial. I think it could be misleading, and gave several other reasons, and then said, on balance, I don't want to do it. Don't we just review for abuse of discretion? And if so, why is that an abuse of discretion? Well, you do review for abuse of discretion, but you look at everything that the court was considering. One of the things that the court said was, in sustaining the complaint, the department had indicated that the officer had good intentions for conducting the search they found to have been unlawful, and that some way excused the officer's unlawful actions. The fact is, what, in sustaining the complaint, what the department found was, Officer Shearer's actions went beyond the bounds of the law. Officer Shearer had indicated that he received the consent, and in sustaining the complaint, they found he had not, in fact, received the consent. He said, he claimed that he received. So, we have Officer Shearer broke the law, and lied. And that's why- Maybe, or he may have misunderstood, or he may have misremembered, or any number of other things, which is why the trial judge said, this is going to end up as a mini trial about what happened somewhere else. Well, yeah, I mean, I don't believe it necessarily would have been a mini trial, but even if it had, given the closeness of the case, given the fact that the credibility of the officers was so important. And we're just dealing with two officers corroborating each other's testimony. And their testimony, in fact, was disputed by other witnesses. It was essential to be able to cross-examine the officer on his credibility. And so, on balance, I think, in fact, it was an abuse of discretion to preclude defense from cross-examining Officer Shearer with this sustained complaint. And if I could now just turn to the sentencing issues, unless the Court had any further questions. Mr. Winston was denied his right of allocation. Mr. Levy, assuming that, I mean, obviously he was, okay, and there was error. There was no objection. Indeed, to the contrary, the counsel affirmatively said he doesn't want to talk. So I assume that our review is for plain error. Let's assume that it was an error. And let's assume it was plain. I would disagree with Your Honor on that point. I understand you do. The reason I'm trying to get this all out is so you can tell me exactly why you disagree. It's subject to plain error analysis. And this is different from the situation where the district court has affirmatively denied a defendant an opportunity to speak. His, the district court had used up all available discretion on the guideline range because he sentenced at the bottom where the defendant said he wanted to be sentenced. The district court denied the government's requested upward adjustment. And that leaves the enhancement for reckless endangerment, which appears to be subject to an objective test, that is, whether a reasonable person would have realized that he was endangering the safety of others. That's short-circuiting. So having said that, in as sort of most extreme way I can in order to elicit from you where that's wrong, I would appreciate your thoughts on the whole scenario. First, this Court has only ever applied harmless error analysis to denial of the right of allocution. So I don't believe this panel can overturn the long line of cases that says harmless error applies in this case. I certainly recognize the fact that perhaps plain error might apply in the Third Circuit. A couple years ago decided plain error should apply. And the Fifth Circuit recently went on bonk this year and reversed their prior holding that it was per se reversible error. Half the Circuit still hold it's per se reversible. This Court had always said it's harmless error. So I think this Court is in fact bound by the harmless error analysis. But in terms of plain error, even looking at how the Third Circuit applies plain error, what the Third Circuit had said, and that's the Adams case, is you still should presume that there was prejudice. Well, see, that's where I have a problem in presuming prejudice when there has been no affirmative denial of a request to speak, which there wasn't here. There I can understand presuming prejudice. But here, albeit incorrectly, an opportunity was afforded. Sure. The Third Circuit, I just note, in the Adams case, identical circumstances. Yeah. I understand that. But I don't have to necessarily agree entirely with Adams. But the real focus, and whether you do a harmless error or whether you do plain error, the real focus that I want to hear you on is this using up the available discretion point. In other words, would it have made a difference? I realize that it was error. But is there any way that it would have made a difference? And I think the standard should be is there any possibility that it could have made a difference. And the answer, I think, is plainly yes. Okay. Go ahead. Because we, number one, there were downward departure. There was a downward departure request. And there could have been other downward departure requests that Mr. Winston could have come up with himself while allocuting, that counsel had not raised before. Because we're not dealing with a mandatory minimum sentence here, the Court still had discretion to give a lesser sentence. What was the basis of the requested downward departure? I believe it was for overrepresentation of criminal history. But that's not something that the defendant's going to persuade the judge on. That's just going to be a matter of the judge looking at the criminal history and saying, well, this was for a diddly-squat quantity of drugs or something. And so I think giving him a category 3. Well, we don't know. We don't know if Mr. Winston could have given some background to those prior convictions that could have persuaded the judge. And that's the whole point. We don't know what Mr. Winston might have said. I understand we don't know what he would have said. But as a practical matter, I can't conceive that what a defendant would say would affect a criminal history calculation. Perhaps, Your Honor. But as I said, he could have raised pro se departure requests, which were not raised by counsel, because we don't know what he might have raised. And while I grant you the Court might not have been persuaded by them, the fact is that possibility existed, because we're not dealing with the mandatory minimum sentence. And Mr. Winston could have provided additional facts with respect to the reckless endangerment. I recognize that there perhaps is a reasonable person standard there, but you still have to deal with whether the defendant was aware of the substantial risk. And certainly while there was evidence presented as to Mr. Winston's awareness based on the general practice in the Nickerson Gardens Housing Project for young men to run through homes on a pretty regular basis when they're being chased by police, and whether or not that created a substantial risk, that goes to the defendant's subjective awareness. And so it is possible that Mr. Winston could have presented additional facts that could have persuaded the Court. And this is what the Supreme Court in Green was talking about, that it's only the defendant with halting eloquence who could perhaps persuade a judge rather than defense counsel, and that's why it's necessary in all circumstances to personally address the defendant, make sure he's aware he can speak, and give him the opportunity to address the Court. And I'd like to reserve the balance of my time unless the Court has any questions. Thank you. May it please the Court. Good morning, Your Honor. Scott Hyer for the United States. In this particular case, and I'll start with the Batson issue, the Court clearly understood the Batson framework. Counsel, I don't know how you can say that's clear. I mean, I think maybe we can give the Court the benefit of the doubt, but the only thing he really says, he says, I asked you to approach if you had a challenge for a cause that created a Batson issue. And there is, and then he says, is Batson really applicable when we have two other blacks on the jury? He observes that there's a brother-in-law working for the police, and that's the end of it. So why is that the Batson framework? Because that's not the beginning of it. That was the end of the discussion, but the Court discusses Batson claims before any peremptory challenges were made to African-American jurors, or jurors of any race, frankly. The Court said, and this is on excerpt of record page 91, he wants to take up the matter to avoid delay. He references the fact that there are two black jurors, I correct him and say that there are three. He wants to set up a framework for how we're going to handle Batson claims. Well, I understand, but that doesn't address the point that we can't tell from the transcript whether the district judge decided there was no prima facie showing for that there was, and it had been rebutted successfully. I don't think that from the record you can draw anything other than that no prima facie showing was made, because he never turns to the government, and the government never offers a race-neutral explanation for the peremptory challenge. The Court asks the defendant. Well, he didn't ask the defendant whether he wanted to speak either, so I'm not sure what kind of inference one can draw from that. Well, the fact of the matter is the Court did, when the defendant made a Batson challenge to the government's use of a peremptory against Juror Small, and instead of saying, for example, counsel, you can't do that, you haven't established a pattern of strikes, or counsel, you can't do that, Batson doesn't apply unless there's a pattern, that's not what occurred. The Court did listen to argument by the defendant's counsel. I mean, reading the cold transcript, you were there, I wasn't there, so you probably have a different feel, but I must tell you that reading the cold transcript, it sounds like the judge was relatively confused. For example, he said something about approach me when there's a Batson challenge for cause. Well, it doesn't apply when there's a challenge for cause, and I think it was you who corrected him and said, I think you mean peremptory challenge. There's at least the potential to read this transcript as suggesting that the judge was not totally with the program on how to analyze Batson, and assuming, for the sake of this question, and I know you don't concede it, but assume that we were to conclude that the judge didn't fully apply Batson, what would be the remedy that should flow from that, if that were our conclusion? The proper remedy would be remand for an evidentiary hearing. The Court could clearly state, clarify what it meant when it said these things, and in particular, whether or not it was, in fact, ruling that there was no prima facie case. And again, the standard here is clear error, and I would say that that applies twofold. Well, the first is, did the Court understand the framework? The government argues, as it does in its brief, that from the Court's conduct, you can tell that it did. But even so, there isn't, based on the record you have here, and that's what the Court, I would submit, was doing, that there was nothing to show an inference of discrimination. The government had accepted the panel already with two African-American jurors. The only reason offered up by the defense was the law enforcement connection of jurors' models, which the Court correctly noted doesn't necessarily cut in favor of the government, that in those circumstances, there isn't clear error, and there isn't the need for remand for the evidentiary hearing. But should this Court disagree, the government would ask that the remand be only for an evidentiary hearing. There is one issue on the Batson that I would like to address, and this was something that was on page three of the defendant's reply. There is a discussion which occurs where the Court asks, are you intending to challenge them? I want to anticipate Batson claims. That is when the government corrected the Court and said that there are actually three African-American jurors, and then I responded. I'm sorry, the Court confirmed there are three. I responded, I am not sure about one of them, but I would imagine so. In the defendant's reply brief, the defendant characterizes that statement as meaning that I imagine I would use a peremptory challenge against one of them. That's not what that statement in the record refers to. That refers to the number of African-American jurors. In other words, I'm not sure about one of them, meaning I'm not sure one of them is African-American. They may or may not be African-American. But I would imagine so. I believe that that person was. And then I, the Court named the three African-Americans, and I affirmed that that was correct. That's what I believe. So just so the Court is clear, that passage does not refer to the government imagining it would be using peremptories against African-Americans. And, of course, it only used it on one and had accepted twice the other two African-American jurors. So if I can, unless there are further questions on the Batson issue, move on to the issue of the complaint. The issue of the complaint, the characterization of the complaint simply doesn't hold up. There's just no finding in those documents that Officer Scheer lied or was in any way not credible. In fact, the finding was based taking Officer Scheer's version of events as truth. The Los Angeles Police Department determined that he had made a mistake in his determination that he had consent and, as a result, ordered training. In fact, they highlighted the fact that the officers were doing a good job. And, frankly, the government, had the Court decided that this was going to come in, the government would have hotly contested the relevance of it. The Court, in fact, concluded that it wasn't relevant. And even if it did have some relevance, that the time-consuming nature of it should exclude it. The defendant argues that the closeness of this case is why it should come in. The government argues the contrary, that it's in the closest of cases, that evidence that is irrelevant or evidence that could confuse the jury or consume time should not come in. That highlights the need to exercise judgment and exclude evidence that's not relevant and would be time-consuming. Unless the Court has any further questions on the complaint, I'll move to the Rule 32. I agree with Defendant's Counsel that the standard in the Ninth Circuit, when there is error, as there was here, in affording the defendant the right to allecution, that it should be harmless error, not plain error. And I would say that what the defendant is arguing is a return to Madrona. The defendant repeatedly has made, I'm sorry, the Defendant's Counsel repeatedly has argued to the Court that because you don't know what the defendant said, you always have to remand for resentencing. And that's reversible per se. And that's not what the law in this circuit holds. Well, it's a little more subtle than that. He's saying that the district court had not used up all of its discretion. The sentence was at the low end. And one enhancement had been rejected. But there was a second enhancement that was applied, and there was at least one downward departure that was rejected. And I think his argument is that when there is remaining discretion, and there's kind of a live issue about whether a downward departure should be granted, that the defendant's pitch might make a difference to the judge. What's your response to that? My response would be threefold, Your Honors. First is that both in Ortega-Lopez and Leisure, there were requests for downward departures. And the fact that they weren't given didn't go into the openness of the issue. So they still said in those cases the Court had exercised its discretion. In this case, the one aspect that we're really dealing with is how would this have affected the Court's decision to apply the reckless endangerment enhancement? As the Court has pointed out, it is an objective standard. The defendant did put on evidence through declarations as to the objective reasonableness of the defendant's conduct in this case. And the Court decided that it disagreed with that and that that objective And you don't think that a defendant could speak to that effectively in any way? Honestly, no, Your Honor. The defendant would have to be explaining to this Court how running away from police with a loaded firearm into an open apartment that's occupied, hiding it there in order to protect yourself, and then running away is somehow not a reckless disregard objectively of people's safety. I don't believe the defendant could have done that, even in the halting, sympathetic terms that the defendant's counsel urges could occur in this case. The third point I'd like to bring up is Leisure. And Leisure does say, when it's analyzing harmless error in that case, that, for example, in Leisure, you have a defendant who was stopped from her desire to further allocute and further try and convince the judge to grant her downward departure for acceptance and responsibility. The Ninth Circuit in that case said that, let me first focus on what it didn't say. It didn't say, there's harmless error here because you had your shot. Ninth Circuit, this Court, said, it's harmless error because you haven't identified on appeal what you would have said that made a difference. The defendant characterizes our reading of that case as far-fetched. But, in fact, Adams itself on footnote 8, I'm sorry, excuse me, footnote 4, in fact, reads Leisure the exact same way the government does. Adams, the Third Circuit case? Adams, the Third Circuit case, reads Leisure the same way. The problem is, it seems to me that that makes sense in the Leisure situation where the defendant's already spoken and the issue is speaking some more on a discrete issue because it's clear she wanted to speak. Here, the difficulty I have with saying that the defendant has some obligation to show what he would have said, first of all, I don't know how you do that on appeal. I mean, there's no mechanism. And I guess, I mean, the irony here is this defendant didn't want to talk. I mean, that seems perfectly clear. And I suspect if there's a remand, he's going to say he doesn't want to talk again for probably good reasons that everybody in this room can figure out. But that's beside the point, isn't it? When he hasn't been given a chance even to say, I don't want, I don't have anything to say? Somewhat. It's somewhat beside the point. It's true. We don't know what he would have said. But that's part of what Leisure's getting at is that on the appeal, you should be identifying something. And even if it's an explanation as to if remanded, the defendant would provide the court with further explanation as to the reasonableness of conduct of running through the neighborhood with the loaded firearm. My guess is that that's not made because. But why would I pay any attention to that? Because that's just a lawyer's statement in a brief. I mean, this is an odd construct. I mean, you know, if it were a habeas review of some sort, that might be very different. I mean, she'd have some kind of record of it. But I don't know how you get a record of what the defendant would have said. That's true. But then it's clear that it's still a harmless error. I admit that's a difficult question to answer. Because when you have harmless error, you somewhat need to be looking at what could the defendant have said. Well, I mean, the problem, I guess I have a little problem, honestly, with why a lawyer can't speak for his client. But we know the Supreme Court has said that's not correct. Okay. So you've got to directly make sure yourself. So if it's true that the lawyer can't speak for his client in this situation, then why don't you just basically have to reverse and say have another go and ask him and he'll say I don't have anything to say? Some courts have certainly taken that approach. This Court has not. But why shouldn't we? Well, first, because of the precedential holdings of this other court's opinions that it's harmless error. But what if I say leisure is different? What if I say leisure is just different, like I just said a minute ago? It's just plain different. And so, I mean, even though I personally would say it's either harmless or plain error analysis is available, the question is does it hinge on the availability of remaining discretion or does it hinge on the defendant's proffer somehow that what he would have said could have made a difference? What it hinges on first is the standard is harmless error. Aside from the facts of leisure, the harmless error standard was stated in Mejia and Ortega-Lopez and leisure. So it's clear that even in the vacuum it's a harmless error standard. The question then, I believe as the Court's putting it, is how do we then go about without knowing what the defendant would have said because he didn't get the opportunity? Okay. Let me just. Yeah. Yeah. I'm sorry. Well, I was just saying, supposing I am correct in distinguishing leisure because there the defendant spoke and then wanted to keep on talking and the district judge said no, no, no, no, no, no, no about that many times. Okay. So that's different because here the district court did not give, the defendant didn't speak at all. So it wasn't a matter of cutting him off at the pass. So the harmless error inquiry here may not have anything to do with what the defendant actually could have said had he started speaking and got stopped. Here the harmless error inquiry may have more to do with whether the district court had used up its available discretion in a way that anything, objectively, anything that the defendant could have said might have had some effect. And we can't say one way or the other. True, except for the one outstanding issue is the reckless endangerment, which is an objective standard, not a subjective standard. Is opposing counsel incorrect when he says that it's possible that if a defendant allocutes the discussion or the comments or the plea for mercy might bring up something else in the judge's mind, another basis for downward departure that wasn't obvious or wasn't brought up by counsel? Is that a possibility? It's a possibility, but to allow reversal when there is an error such as this case, that would embody a, per se, reversal standard because there could always, when the defendant doesn't speak, there could always be the possibility, especially when one Who bears the burden to show that the error which is conceded is harmless? I believe it's the defendant's burden, but I don't know. To show that it wasn't harmless? I'm sorry. I didn't. When there's a conceded error. Yes. And the argument is, well, there's an error, but never mind. We don't have to reverse for that error. Whose job is it to convince us that the conceded error is harmless? I'm sorry. I'm sorry. Yes, that would be the government's burden that it's harmless, which I believe we've shown because the one outstanding area is the reckless endangerment area, and that would be an objective standard, unless the Court has further questions. Anything else? All right. Thank you. Mr. Libby, we'll add to you the extra time that government counsel, that we used up with him. Your Honor, with respect to the Rule 32 issue, the allocution issue, leisure is different. Leisure is not a denial of the right of allocation case. In leisure, the defendant was given her right of allocation. After she had given her right of allocation, the judge then was giving his decision, and started to impose a denial of acceptance of responsibility. And she said, well, I want to now talk about that some more. And what this Court in leisure said was she hasn't identified anything more she would have said with respect to the acceptance of responsibility, that one thing that she was claiming. It's very different from not being given the opportunity to speak at all. May I ask you a question following up on the possibility that the allocution could have brought up some other basis for doing something? Could it? Because isn't it waived if it's not brought in? If it's not presented prior to sentencing? Yes. I mean, isn't it just purely, purely, purely speculative? As compared with basically not being speculative within the guideline range. I agree. I mean, speculative, but not badly so. All I can say is I've handled appeals where defendants have, in fact, raised departure issues on their own during sentencing. That were represented by counsel. Yes. Generally, unsuccessfully. Okay. But they have raised them.  Third Circuit has a different standard for whether or not, if the court doesn't comment on a departure request in Third Circuit, that's an automatic reversal. And so I've had situations there where clients have made departure requests during their allocation, which the court never then addressed, and the Third Circuit then sent it back. Okay. So it certainly does happen. And every circuit that has addressed the denial of the right of allocation issue, whether they're applying harmless error or plain error, says it's whether there's any possibility that the sentence could have been lower. And barring a mandatory minimum sentence, it could be lower. And a mandatory minimum would, I think, perhaps be the only situation where that's it. And the defendant, of course, received the mandatory minimum. So unless the court has any further questions on any of the other issues? No. Anything else? All right. I think not. Thank you both for discussing the case with us a little longer than normal. And we appreciate it. And the matter just argued will be submitted. Thank you. Stand in recess. All rise. Ms. Horton, the session is adjourned. You get it? I'll get it.  Thank you, Jerry. Thank you. Thank you.  Thank you. Thank you for your assistance.
judges: Browning, Rymer, Graber